## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

TERRI L. TRACY,

      Plaintiff,

v.                                                                2:23-cv-139-NPM

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____

### ORDER

Plaintiff Terri L. Tracy seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Docs. 10, 11),[1] Tracy filed an opening brief (Doc. 18), the Commissioner responded (Doc. 19), and Tracy replied (Doc. 20). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

## I.  Eligibility for Disability Benefits and the Administration's Decision

### A.  Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

_____

[1] Cited as "Tr." followed by the appropriate page number.

twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.   Factual and procedural history

On April 30, 2020, Tracy applied for disability insurance benefits. (Tr. 68, 222, 225-29). She asserted an onset date of March 27, 2020, alleging disability due to the following: arthritis, hypothyroidism, depression, "addiction," hepatitis C, and attention deficit hyperactivity disorder ("ADHD"). (Tr. 222, 245, 259). As of the alleged onset date, Tracy was 58 years old and had completed two years of college. (Tr. 67, 222, 260). She previously worked as a social-service aide, facilities planner,

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

office manager, data-entry clerk, and a drug-and-alcohol-abuse counselor. (Tr. 27, 269).

On behalf of the administration, a state agency[5] reviewed and denied Tracy's applications initially on March 10, 2021, and upon reconsideration on June 24, 2021. (Tr. 67-95). At Tracy's request, Administrative Law Judge (ALJ) Ryan Johannes held a hearing, and on February 9, 2022, the ALJ issued an unfavorable decision finding Tracy not disabled. (Tr. 17-28, 38-67, 123). Tracy's timely request for review by the administration's Appeals Council was denied. (Tr. 1-7). She then brought the matter to this court, and the case is ripe for judicial review.

## C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 416.903(a).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a

qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found that while Tracy continued to work after the alleged onset date, that work activity did not meet the regulatory thresholds to be considered substantial gainful activity. (Tr. 19). At step two, the ALJ characterized Tracy's severe impairments as: osteoarthritis of the interphalangeal joints and other joints; and osteopenia. (Tr. 19). The ALJ also determined that Tracy suffered from non-severe impairments such as: chronic fatigue syndrome, idiopathic progressive neuropathy, hypothyroidism, hepatitis, chest pain, herpes, back pain, opioid dependence, major depressive order, and ADHD. (Tr. 19-20). At step three, the ALJ determined Tracy did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 21).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except occasionally climb ramps and stairs; never climb ladders and scaffolds; frequently balance; occasionally stoop, kneel, and crouch; never crawl; frequently reach; frequently handle and finger; avoid concentrated exposure to extreme heat or cold; avoid concentrated exposure to vibration; and avoid all exposure to moving mechanical parts and unprotected heights.

(Tr. 21-22). Relying on a vocational expert's testimony, the ALJ found that Tracy had past relevant work, including work as a data-entry clerk, intake worker, office manager, facilities planner, social-service aide, and drug-and-alcohol-abuse counselor. (Tr. 27). Finding no conflict between the RFC and the functional demands as reported by the DOT and the vocational expert's testimony, the ALJ found Tracy able to work in all of these occupations except that of data-entry clerk.[6] (Tr. 27).

Thus, for purposes of the Act, the ALJ concluded Tracy was not disabled from March 27, 2020, the alleged onset date, through February 9, 2022, the date of the decision. (Tr. 27).

## II.   Analysis

Distinct from the numerous social-security briefs submitted to the court each year (including those of Tracy's counsel), the opening brief in this matter curiously falls short of the baseline requirement for any brief: to squarely frame the issue or issues presented. Sifting through the clutter, the question presented is this: does substantial evidence support the ALJ's finding that Tracy's subjective complaints were not as intense, persistent, or as functionally limiting as she alleged?

---

[6] The ALJ found that the data-entry-clerk occupation exceeded the RFC because it required constant fingering. (Tr. 27).

## A.    Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the

agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. The ALJ properly evaluated Tracy's subjective complaints in light of the objective medical evidence and other evidence of record.

Recall that the RFC limits Tracy to light work involving only frequent—as opposed to constant—handling and fingering (among other limits). Pointing to her own testimony and other statements, Tracy contends the ALJ should have found that she can handle and finger less than occasionally, and that her back and other pain symptoms so interfere with her ability to focus and concentrate as to preclude regular and continuous work. In pertinent part, Tracy testified that she cannot lift, cannot carry a gallon of milk without dropping it, and can cook and wash dishes, but only with pain. (Tr. 50-51, 54, 56, 59.). She also reported she can write, but it's messy, she cannot use the computer very long or sew due to hand pain, and she needs assistance doing laundry. (Tr. 54-55, 57). And despite physical therapy, Tracy's arthritic pain, which travels from her neck down to her arms and hands, makes it difficult to focus and remember information. (Tr. 50-51).

When considering a claimant's subjective complaints, an ALJ must follow a two-step process. SSR 16-3p, 2017 WL 5180304 at *3 (Oct. 25, 2017). First, the claimant must provide evidence of an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's symptoms. Second, the ALJ must evaluate the intensity and persistence of those

symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id*. at *3-4.

If the objective medical evidence does not substantiate the claimant's statements about the intensity, persistence, and functionally limiting effects of symptoms, then the ALJ must consider other evidence in the record to determine if, and to what extent, the claimant's symptoms limit her ability to do work-related activities. This other evidence includes the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to relieve the symptoms; treatment, other than medication, for the symptoms; any other measure used to relieve the symptoms; the claimant's daily activities; and any other factors concerning functional limitations and restrictions due to the symptoms. *See* 20 C.F.R. §§ 404.1529(c), 404.1545(a)(3); SSR 16-3p, 2017 WL 5180304 at *7-8. The regulations provide that, generally, a claimant's statements about her symptoms, alone, will not establish disability; there must also be objective medical evidence. *See* 20 C.F.R. § 404.1529(a)-(b).

On this score, the ALJ found that Tracy's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not bolstered by her treatment history or medical findings. .

..." (Tr. 20).

As the ALJ took note, Tracy indicated in her function report that she could take care of her personal needs, and that she prepared meals daily, managed her finances, spent time with her children and grandchildren, attended church, and sewed (even though it took longer). (Tr. 25, 292-97). And in a December 2020 consultative exam, Tracy reported that she did not need any help with activities of daily living, and that she was able to cook, clean, shop, do laundry, and sew. (Tr. 25, 655). The ALJ also found persuasive the state-agency physicians' findings that Tracy could perform a limited range of light work, but—in Tracy's favor—disagreed with their findings that Tracy had no limitations with respect to fingering, stooping and crawling. (Tr. 21-22, 26, 77-81, 90-92).

The ALJ's decision was also informed by an extensive review of Tracy's treatment records. (Tr. 22-26). Of note, there were many examinations in which Tracy had normal grip strength, finger dexterity, and gait; she was able to pick up small objects bilaterally; able to zip, button, and tie; and the strength of her upper and lower extremities was consistently rated 4/5. (Tr. 655-57, 777, 909). At other times, providers found Tracy in "no acute distress," with full range of motion and normal strength, and without any motor, sensory, or reflex abnormalities; and that "all other joints [besides her neck] in the musculoskeletal system moved in full range without difficulty." (Tr. 414, 448, 655-56, 716, 719, 777).

In another instance, Tracy complained of pain with motion in her shoulders, wrists, MCP joints, cervical spine, and lumbosacral spine, but—as the ALJ noted—the medical provider diagnosed this pain as mild, except for the left wrist, which was moderate. (Tr. 659). Other records show that Tracy was in "no acute distress," able "to rise from a chair without difficulty," and "did not require help" changing or getting on and off the examination table. (Tr. 608, 655, 716, 719, 723). And the ALJ noted that "medication handled her neuropathy." (Tr. 23-24, 906, 909).

As for the alleged impact of pain on Tracy's ability to focus or concentrate, the ALJ acknowledged some observations in the records that Tracy appeared disheveled, was impaired with limited insight, and exhibited poor eye contact and distracted focus. (Tr. 412, 449, 493, 551). However, Tracy generally had a clean and appropriate appearance; normal mood, affect, speech, eye contact, and thought processes; and good attention, focus, motivation, and energy. (Tr. 628, 630, 632, 684, 688, 690). Indeed, in a self-assessment—when asked whether she had difficulty concentrating—Tracy indicated "not at all." (Tr. 951, 953). And the ALJ also found persuasive the findings of a state-agency psychologist that Tracy only had mild difficulties in her abilities to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt and manage herself. (Tr. 90).

Finally, Tracy points to her demonstrated willingness to work based on an "uninterrupted 25-year work history" as something that should have given her subjective complaints more credence. (Doc. 18 at 14). But the ALJ was not required to explicitly discuss this work history. Although the regulations require an ALJ to consider all record evidence—including prior work history—when formulating the RFC, nothing requires an ALJ to explicitly discuss that work history as part of a subjective-symptom evaluation. *See* 20 C.F.R. § 404.1529; SSR 96-8p, 1996 WL 374184; SSR 96-7p, 1996 WL 374186; *Mahon v. Comm'r of Soc. Sec.*, No. 8:16-cv-1462-T-JSS, 2017 WL 3381714, *10 (M.D. Fla. Aug. 7, 2017) ("Although the ALJ did not expressly discuss Plaintiff's work history in assessing her statements regarding her symptoms, it is clear the ALJ reviewed and considered statements regarding her prior work record."); *see also Sickmiller v. Saul*, No. 8:19-cv-3087-SPF, 2021 WL 1186846, *8 n.5 (M.D. Fla. Mar. 30, 2021) (no binding precedent requires an ALJ to "explicitly discuss a plaintiff's work history" when assessing a claimant's subjective complaints). Besides, the ALJ extensively referred to Tracy's work history during the hearing and referenced her past work when questioning the vocational expert. (Tr. 62-65). In short, the ALJ was not required to explicitly discuss Tracy's work history in his decision, and the record shows the ALJ considered that work history.

Supported by substantial evidence, the ALJ properly evaluated Tracy's subjective complaints and accepted them to the extent he found them consistent with the objective medical evidence and other evidence of record. And the court must decline Tracy's invitation to reweigh the evidence and potentially come to a different conclusion. *See Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 882 (11th Cir. 2019) ("To the extent that Borges points to other evidence that would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of this Court's appellate review, which precludes it from re-weighing the evidence or substituting its own judgment for that of the Commissioner.").

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the proper legal standards. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment in the Commissioner's favor, terminate all scheduled events, and close the case.

**ORDERED** on March 25, 2024

NICHOLAS P. MIZELL
United States Magistrate Judge

13